UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SERGI HERNANDEZ GRANO,

                                            Petitioner,                    **OPINION & ORDER**

        - against -                                                          No. 19-CV-6970 (CS)

KATHERINE PATRICIA MARTIN,

                                            Respondent.
------------------------------------------------------------x

Appearances:

Neil J. Saltzman
The Law Office of Jeremy D. Morley
New York, New York
*Counsel for Petitioner*

Richard Min
Burger Green & Min LLP
New York, New York
*Counsel for Respondent*

Seibel, J.

        Before the Court are Petitioner Sergi Hernandez Grano's Objections, dated March 19,

2021, (Doc. 93), and Respondent Katherine Patricia Martin's Objections, (Doc. 92), also dated

March 19, 2021, to the Report and Recommendation ("R&R") of U.S. Magistrate Judge Paul E.

Davison, dated March 5, 2021, (Doc. 91), recommending that Petitioner's motion for attorney's

fees and costs incurred in connection with prosecuting this case be granted in part and denied in

part, (Doc. 81).  Petitioner requested a total of $467,944.46 ($359,799.05 in fees and

$108,145.41 in costs).[1]  (Doc. 81 ¶ 5.)  For the reasons set forth below, the Court adopts the R&R in part and awards Petitioner fees and costs in the amount of **$34,296.19**.

I.    <u>**BACKGROUND**</u>

Familiarity with the prior proceedings, the R&R, and the issues presented is presumed, but I will provide a brief summary for context.  This case was commenced on July 25, 2019, when Sergi Hernandez Grano filed a petition under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 (the "Hague Convention" or "Convention"), for the return of his child to Spain from the United States.  (Doc. 1.)  Respondent Katherine Patricia Martin opposed the petition.  (Doc. 7.)  I held a bench trial in December 2019 and January 2020, after which I granted the Petition, (Docs. 48-49).  Respondent appealed my decision, and the Second Circuit affirmed by summary order on July 20, 2020.  *Grano v. Martin*, 821 Fed. App'x 26, 27 (2d Cir. 2020) (summary order).  Respondent's petition for rehearing *en banc* was rejected, and on July 31, 2020 Petitioner's motion for issuance of the mandate forthwith was granted.  (Doc. 58.)  I ordered Respondent to return the child to Spain by August 13, 2020, (*see* Minute Entry dated Aug. 4, 2020), and after some complications, (*see* Minute Entry dated Aug. 13, 2020), the child was returned, accompanied by Respondent, on August 19, 2020, (*see* Docs. 72-73).

Petitioner filed the instant motion for attorney's fees and costs on September 4, 2020.  (Doc. 81.)  Respondent argued that an award would be inappropriate, and that the motion should be denied, because of the abuse she suffered from Petitioner and her indigent financial condition.  (Doc. 86.)  In the alternative, Respondent argued that Petitioner's requested amount should be

---

[1] Of the submitted costs, $48,968.80 was allegedly paid by Petitioner's attorneys on his behalf and $59,176.61 was paid by himself.  (Doc. 81 ¶ 5.)

reduced because Petitioner's counsel's hours were not necessary or reasonable, and the records were insufficient to evaluate the necessity of the work performed.  (*Id.*)

Judge Davison recommended that the Court adopt a 5% reduction in the hours billed by Petitioner's counsel Barry Abbot and his staff due to vague time entries.  (R&R at 7.)  He further recommended reductions in the hourly billing rates of Petitioner's attorneys, finding $425/hour for Mr. Abbott, $500/hour for Jeremy Morley, $375/hour each for Neil Saltzman, Alexis Cirel, and Daniella Schneider, and $200/hour for paralegals Brenda Mileo and Fritz Capria to be reasonable.  (*Id.* at 8-10.)  Additionally, Judge Davison found that the time entries relating to collateral state proceedings in Family Court were not necessary to the instant Hague Convention proceeding, and thus not compensable.  (*Id.* at 10.)  Because many of the time entries Petitioner submitted were either unclear as to which proceeding they concerned or were commingled between the two, Judge Davison recommended a 50% reduction in all commingled or unclear entries.  (*Id.* at 11-12.)  Similarly, because the provided documentation of costs paid by Petitioner's counsel did not distinguish between costs associated with the state and federal proceedings, Judge Davison recommended reducing all such costs by 50%.  (*Id.* at 15.)  He further recommended disallowing certain travel expenses paid by Petitioner that were explicitly associated with the state court proceedings or were insufficiently supported by receipts, and reducing the costs of translation/transcription services, which did not distinguish between the state and federal proceedings, by 30%.  (*Id.* at 14-16.)  Finally, Judge Davison found that Respondent had not met her burden to demonstrate that her removal of the child from Spain was related to Petitioner's psychological abuse, but recommended an 85% equitable reduction in the fee award due to Respondent's inability to pay.  (*Id.* at 17-18.)

3

Petitioner objects to the R&R, arguing that the fees and costs associated with the state court proceeding are in fact recoverable because they "were necessarily incurred in order to bring about the return of his son to Spain."  (Doc. 93 at 7; *see id.* at 3-8.)  He also argues that the 85% equitable reduction was unreasonable and contrary to the legislative intent behind the International Child Abduction Remedies Act ("ICARA").  (*Id.* at 8-11.)  Conversely, Respondent objects to the R&R on the basis that it was unnecessary and unreasonable for Petitioner to retain multiple law firms, (Doc. 92 at 5-6), that Petitioner's request for fees is supported by inadequate documentation, (*id.* at 6-7), that the reduced hourly rates recommended by Judge Davison are too high, (*id.* at 7-9), that any fees and costs not clearly associated with the federal case should be disregarded entirely, (*id.* at 9-11), that Petitioner's request for costs is untimely and procedurally defective, (*id.* at 11-13), that Petitioner's status as an abuser merits a further reduction or elimination of the fee award in its entirety, (*id.* at 13-17), and that any award against Respondent is inappropriate considering her financial condition, (*id.* at 17-19).  Respondent argues that the totality of these factors suggests that any award of fees and costs for Petitioner would be "clearly inappropriate" under ICARA.  (*Id.* at 19-21.)

## II.    <u>LEGAL STANDARD</u>

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  A party may object to the magistrate judge's report and recommendation, but the objections must be "specific," "written," and submitted "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *accord* 28 U.S.C. § 636(b)(1)(C).  A district court must review *de novo* those portions of the report or specified proposed findings or recommendations to which timely

4

objections are made.  28 U.S.C. § 636(b)(1)(C).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); *see Marji v. Rock*, No. 09-CV-2420, 2011 WL 4888829, at *1 (S.D.N.Y. Oct. 13, 2011).  The district court may adopt those portions of a report and recommendation to which no objections have been made, provided no clear error is apparent from the face of the record.  *See White v. Fischer,* No. 04-CV-5358, 2008 WL 4210478, at *1 (S.D.N.Y. Sept. 12, 2008); *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985); Fed. R. Civ. P. 72 advisory committee note (b).

## III.   DISCUSSION

### A.   Attorney's Fees

The Hague Convention treaty, to which the United States and Spain are both signatories, provides in relevant part:

> Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed . . . the child,  . . . to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Hague Convention, art. 26.  This language differs from ICARA, 22 U.S.C. § 9001 *et seq.*, which contains procedures for the "implementation of the Hague Convention in the United States."  *In re S.E.O.*, No. 12-CV-2390, 2013 WL 4564746, at *1 n.2 (S.D.N.Y. Aug. 28, 2013).  ICARA provides that any court ordering the return of a child "*shall* order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, . . . and transportation costs related to the return of the child, *unless* the respondent establishes that such order would be clearly inappropriate."  22 U.S.C. § 9007(b)(3) (emphasis added).

5

Under ICARA, "a prevailing petitioner in a return action is presumptively entitled to necessary costs, subject to the application of equitable principles by the district court." *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013); *see Souratgar v. Lee Jen Fair*, 818 F.3d 72, 79 (2d Cir. 2016) ("A prevailing petitioner's presumptive entitlement to an award of expenses is subject to the application of equitable principles by the district court.") (cleaned up). "[T]he appropriateness of such costs depends on the same general standards that apply when attorney's fees are . . . awarded . . . only as a matter of the court's discretion." *Ozaltin*, 708 F.3d at 375 (cleaned up).

Once it is determined that a party is entitled to fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Supreme Court and Second Circuit have held that "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a presumptively reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (cleaned up); *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010). In assessing the reasonableness of attorney's fees, the Court must: "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the reasonable hourly rate by the number of hours reasonably expended to determine the presumptively reasonable fee; and (4) make an appropriate adjustment to arrive at the final fee award." *Creighton v. Dominican Coll.*, No. 09-CV-3983, 2011 WL 4914724, at *6 (S.D.N.Y. Aug. 16, 2011). "The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). "[T]here is no precise rule or formula for determining a proper attorney's fees award; rather, the

district court should exercise its equitable discretion in light of all relevant factors." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (cleaned up).

### 1.    Reasonable Hourly Rates

Respondent objects to Judge Davison's recommended hourly rates for Petitioner's attorneys, arguing that even these reduced rates are in excess of those held to be reasonable in other similar cases.  (Doc. 92 at 7-9.)

The reasonable hourly rate is the "prevailing market rate, *i.e.*, the rate prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005) (cleaned up). Petitioner provided the following qualifications for his attorneys.

Mr. Abbott is a partner at Schwartz Sladkus Reich Greenberg Atlas LLP ("SSRGA LLP") and has 40 years of litigation experience in family and matrimonial law.  (*See* Doc. 81 ¶¶ 47-49, 51.)  His only experience with international family law appears to be with the ABA Project Against International Child Abduction.  (*Id.* ¶ 51.)  Mr. Abbott billed at a rate of $675 when representing Petitioner.  (*Id.* ¶ 47.)

Mr. Morley is "one of leading experts on the Hague Convention," and has been practicing law in New York for over forty years.  (*Id.* ¶ 53.)  He has handled "hundreds" of international child abduction and Hague Convention cases, and has lectured, written and testified as an expert on the Hague Convention and international family law.  (*Id.* ¶¶ 54-57.)  Mr. Morley billed at a rate of $600 when representing Petitioner.  (*Id.* ¶ 59.)

Mr. Saltzman has been practicing law in New York since 2003 and has focused his legal practice on international family law matters.  (*Id.* ¶¶ 60-61.)  Mr. Saltzman billed at a rate of $400 when representing Petitioner.  (Doc. 81, Ex. G.)

In the R&R, Judge Davison agreed with Respondent that the cited rates were above-market and recommended adjusting each hourly rate in accordance with the holding in *Nissim v. Kirsh*, which noted that "courts in this District have not awarded more than $425 per hour in a Hague Convention case."  *Nissim v. Kirsh*, No. 18-CV-11520, 2020 WL 3496988, at *3 (S.D.N.Y. June 29, 2020).  He thus reduced Mr. Abbott's rate to $425, Mr. Morley's rate to $500, and Mr. Saltzman's rate to $375.  (R&R at 9.)

 I agree with the rate Judge Davison assigned Mr. Saltzman.  Given that the attorney in *Nissim* (which was decided just over a year ago) had similar (excellent) credentials to Mr. Morley, I find a reduced rate of $425 to be reasonable for Mr. Morley, and in line with precedent and the market rate for similar cases.  Because Mr. Abbott is not as well-credentialed as Mr. Morley in Hague Convention matters, I find that a reduced rate of $400 is reasonable and appropriate for him.

Judge Davison reduced the rates for attorneys Alexis Cirel and Daniella Schneider to $375 each to correspond with Mr. Saltzman and reduced the rates for paralegals Brenda Mileo and Fritz Capria to $200 each.  (R&R at 9-10.)  Respondent objects to these rates, arguing that because Ms. Schneider and Ms. Cirel have no documented experience in the field, a rate of $275 is more appropriate.  (Doc. 92 at 9.)  She further points to caselaw suggesting that a rate of $129 is a reasonable rate for the paralegals.  (*Id.* (citing *Sanguineti v. Boqvist*, 2016 WL 1466552, at *4 (S.D.N.Y. Apr. 14, 2016) (collecting cases)).)

I agree with Judge Davison's reductions for Ms. Cirel and Ms. Schneider.  While true that Petitioner did not demonstrate that they have any specific experience in this area of the law, their billing rates are higher even than Mr. Saltzman's, suggesting that they are more senior attorneys.  I find that a rate of $375, consistent with Mr. Saltzman's, is reasonable.  As to the paralegals,

Judge Failla noted in a case last year that "for senior paralegals . . . courts have typically capped the rate at $200 per hour," *Carrington v. Graden*, No. 18-CV-4609, 2020 WL 5758916, at *14 (S.D.N.Y. Sept 28, 2020) (collecting cases), and that "[r]ecent cases in this district suggest that the prevailing rate for paralegals is between $100 and $200 per hour," *id.* (cleaned up).  Even Judge Davison noted that "rates for non-lawyers . . . generally 'fall below $200 per hour.'" (R&R at 10) (quoting *HOMEAWAY.COM, Inc. v. City of N.Y.*, No. 18-CV-7742, 2021 WL 791232, at *19 (S.D.N.Y. Mar. 1, 2021)).  Consistent with these decisions, and the fact that Petitioner did not provide any information as to Ms. Mileo's or Mr. Capria's experience or credentials, I find that Respondent's suggested rate of $129 is reasonable.

### 2.    Reasonable Number of Hours

A court may use its discretion, based on its experience in general and with the particular case at issue, to "trim[ the] fat from a fee application."  *Kirsch v. Fleet St., Ltd*, 148 F.3d 149, 173 (2d Cir. 1998) (cleaned up).  It should decrease the number of hours included in the fee calculation if the claimed time is "excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434, and examine "the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case," excluding any billed time that was unreasonable, *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997).  "While it is unnecessary for fee applicants to identify with precision the amount of hours allocated to each individual task, attorneys seeking reimbursement must provide enough information for the court . . . to assess the reasonableness of the hours worked on each discrete project." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 343 (S.D.N.Y. 2016) (cleaned up).  "[V]ague billing entries that prevent the court from determining if the billed hours were excessive" are subject to an across-the-board reduction at the court's discretion.

*Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592, 2013 WL 3965247, at *3 (S.D.N.Y. July 31, 2013).  "If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours."  *M. Lady, LLC v. AJI, Inc.*, No. 06-CV-194, 2009 WL 1150279, at *8 (S.D.N.Y. Apr. 29, 2009) (cleaned up).

Judge Davison recommended an across-the-board 5% reduction for all SSGRA LLP-billed hours for vague entries[2] that prevent the court from adequately assessing whether the time spent on each task was reasonable or necessary.  (R&R at 7.)  Petitioner does not object to this recommendation, (Doc. 96 at 1-2), but Respondent argues that a 5% reduction is insufficient, and the vague entries should be eliminated in their entirety, (Doc. 92 at 7).

Eliminating all vague billings in their entirety is not practical.  "[C]ourts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application."  *Andrews v. City of N.Y.*, 118 F. Supp. 3d 630, 644 (S.D.N.Y. 2015) (cleaned up).  Rather than reviewing each time sheet entry-by-entry, "courts routinely apply across the board reductions."  *In re W. End Fin. Advisors, LLC*, No. 11-CV-11152, 2012 WL 2590613, at *5 (Bankr. S.D.N.Y. July 3, 2012).  Courts in this Circuit have levied various across-the-board reductions in the total number of requested hours based on vague entries.  *See, e.g.*, *Mason Tenders Dist. Couns. Welfare Fund v. LJC Dismantling Corp.*, No. 17-CV-4493, 2020 WL 9600111, at *13 (S.D.N.Y. Dec. 14, 2020) (reducing award by 15% even where vague entries did not "significantly affect[]

---

[2] *See, e.g.*, (Doc. 81, Ex. H at 7) (Mr. Abbot billing 2.80 hours for various tasks, including repeated "email[s to] N. Saltzman and client".)  References to page numbers in documents that are not internally paginated refer to the page numbers generated by the Court's Electronic Filing System.

the Court's ability to review the billing records"); *Congregation Rabbinical Coll.*, 188 F. Supp. 3d at 344-45 (reducing award by 30% in part due to vague entries); *Abeyta v. City of N.Y.*, No. 12-CV-5623, 2014 WL 929838, at *5 (S.D.N.Y. Mar. 7, 2014) (reducing award by 10%); *Klimbach v. Spherion Corp.*, 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (applying 10% reduction for vague billing entries).  Following similar reductions levied within this Circuit, I find a 10% reduction in Mr. Abbott's and his staff's entries to be appropriate here.

Respondent also argues that Petitioner's choice to hire two different law firms and have multiple senior attorneys work on the case was unnecessary and duplicative.  (Doc. 92 at 5-6.)  I find this argument unpersuasive.  Respondent herself had two attorneys,[3] which is reasonable "[g]iven the complexity of the issues involved and the time limitations imposed by the circumstances" of Hague Convention cases, *Neves v. Neves*, 637 F. Supp. 2d 322, 343 (W.D.N.C. 2009), which (like this one) usually involve lengthy factual backdrops, require application of foreign law, and are litigated in a compressed time frame.  "[I]n complex cases an amount of consultation may be reasonable and it is up to the complaining party to specifically establish that it is not."  *Wasniewski v. Grzelak-Johannsen*, 549 F. Supp. 2d 965, 976 (N.D. Ohio 2008) (noting that both sides had multiple attorneys).  Accordingly, I agree with Judge Davison that "retaining multiple counsel in a case as complex as this one is . . . entirely reasonable." (R&R at 6.)

### 3.    Collateral State Proceedings

Petitioner objects to Judge Davison's recommendation that the Court disallow compensation for fees associated with collateral state proceedings and reduce all unclear or

---

[3] Respondent's attorneys were from the same firm, but in today's world I do not see that the lawyers having different affiliations would appreciably increase the time they spent on the matter.

comingled time entries by 50%, arguing that those hours were necessarily incurred to secure the return of the child.  (Doc. 93 at 3-8.)  Respondent objects that Judge Davison's recommendation did not go far enough, arguing that the Court should disallow all time entries that do not unequivocally relate to the Federal proceeding.  (Doc. 92 at 9-11; Doc. 95 at 2-3).

Petitioner contends, without citing authority, that "[t]he correct standard is whether the fees, cost[s], and expenses were necessarily incurred in order to obtain the return of the child, not whether they were necessarily incurred to prosecute the Hague petition."  (Doc. 93 at 3.)  While some courts allow expenses for state-court proceedings, *see, e.g.*, *Lakeman v. Weed*, No. 10-CV-4265, 2011 WL 824588, at *2 (D. Minn. Mar. 2, 2011); *Morrison v. Dietz*, No. 07-CV-1398, 2008 WL 4280030, at *18 (W.D. La. Sept. 17, 2008), others do not, *see, e.g.*, *Sewald v. Reisinger,* No. 08-CV-2313, 2015 WL 6964290, at *3 (M.D. Fla. Nov. 10, 2015); *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 940 (W.D. Tex. 2012); *Lebiedzinski v. Crane*, No. 03-CV-248, 2005 WL 906368, at *3 (D. Alaska Apr. 13, 2005).  While I do not hold categorically that state-court expenses can never be a necessary expense, they were not necessary here.  Modifications of the temporary *ex parte* order of protection, while obviously desired by Petitioner, was not necessary either to his obtaining a favorable ruling from this Court or for him to be reunited with his son in Spain.  And no decision of this Court depended on the outcome of the state case.

Thus, I agree with Respondent and Judge Davison that the state court proceedings were not necessary to the action in this Court.  (R&R at 10; Doc. 92 at 9-11.)  Petitioner may therefore only recover for fees and costs directly incurred in connection with the federal action.

While Judge Davison agreed with the bulk of Respondent's designations as to which of Petitioner's counsel's billing statements were related to the state versus the federal proceedings and which entries were unclear or commingled, Respondent argues that only those entries which

definitively concern the federal Hague Convention matter should be compensable.  I disagree.

Because much of the "unsure/commingled" time undoubtedly did relate, at least in part, to the

proceedings in this court, I agree with Judge Davison's recommendation that a 50% reduction in

those hours designated "unsure/commingled" is appropriate.

***

Accordingly, per the discussion above, I adopt the following aggregate fee reduction:

TOTAL QUALIFYING HOURS FOR REIMBURSEMENT, INCLUDING 50% REDUCTION
IN UNSURE/COMINGLED HOURS

| Attorney | Hours spent re: federal court proceeding | Hours spent re: unsure/commingled | Compensable Hours (federal + 50% unsure/commingled) |
|---|---|---|---|
| Abbott | 117.5 | 148.8 | 191.9 |
| Cirel | 0 | 3.0 | 1.5 |
| Schneider | 0 | 0.7 | 0.35 |
| Mileo (paralegal) | 28.7 | 19.7 | 38.55 |
| Capria (paralegal) | 33.4 | 11.6 | 39.2 |
| Morley | 14.2 | 12.6 | 20.5 |
| Saltzman | 233.25 | 46.75 | 256.63 |

TEN PERCENT VAGUENESS REDUCTION IN SSGRA LLP HOURS

| Attorney | Reduced Compensable Hours for Vague Time Entries | Total Hours |
|---|---|---|
| Abbott | 191.9 - (191.9*.1) | 172.71 |
| Cirel | 1.5 - (1.5*.1) | 1.35 |
| Schneider | 0.35 - (0.35*.1) | 0.32 |
| Mileo (paralegal) | 38.55 - (38.55*.1) | 34.7 |

| Capria (paralegal) | 39.2 - (39.2*.1) | 35.28 |
|---|---|---|

FINAL COMPENSABLE AMOUNTS

| Attorney | Adjusted Billed Hours | Adjusted Hourly Rate | Amount |
|---|---|---|---|
| Abbott | 172.71 | $400 | $69,084.00 |
| Cirel | 1.35 | $375 | $506.25 |
| Schneider | 0.32 | $375 | $120.00 |
| Mileo (paralegal) | 34.7 | $129 | $4,476.30 |
| Capria (paralegal) | 35.28 | $129 | $4,551.12 |
| Morley | 20.5 | $425 | $8,712.50 |
| Saltzman | 256.63 | $375 | $96,236.25 |
| **TOTAL** | | | **$183,686.42** |

## B.    Costs

### 1.    Procedural Objections

Respondent first objects to Judge Davison's recommendations as to costs by arguing that Petitioner failed to comply with Local Civil Rule 54.1, (Doc. 92 at 11-12), which states in relevant part that a party seeking costs must file a notice of taxation of costs, with an annexed bill of costs, within thirty days after the entry of final judgment or after disposition of an appeal unless the period is extended by the Court for good cause. Respondent argues that Petitioner's

request is untimely under the Local Rule, and that he failed to annex the required formal bill of costs.[4]  (*Id.* at 11.)

I agree with Judge Davison's determination that Petitioner has demonstrated good cause for failure to comply with Local Rule 54.1's time requirement here because Petitioner could not finalize his costs until the child was actually returned, which was about two weeks before he filed his motion.  (R&R at 14.)  Because ICARA provides that a court "*shall* order the respondent" to pay necessary court and transportation costs "related to the return of the child," 22 U.S.C. § 9007(b)(3) (emphasis added), and Petitioner filed the motion promptly upon the child's return to Spain, he had good cause for waiting more than thirty days from the decision on appeal, given that the costs associated with the return had been not finalized by the time the instant motion would otherwise have had to be filed.  Further, requiring a formal bill of costs, when the required information was provided in exhibits to Petitioner's motion, would elevate form over substance.  Any violation of Local Rule 54.1 is excused.

While neither party objected to Judge Davison's reduction of compensable costs paid by Petitioner's counsel from $48,968.60 (the amount Petitioner requested) to $17,983.30,[5]  (R&R at 15), Respondent contends that there should be a greater reduction, (Doc. 92 at 13).  She objects to the inclusion of several categories of costs contained in Petitioner's "Detail Cost Transaction

---

[4] Respondent also argues that Petitioner seeks recovery for costs that are outside the scope of what Local Rule 54.1 allows.  (Doc. 92 at 11.)  This argument fails because ICARA, not Local Rule 54.1, provides the substantive basis for recovering costs in this case.  *See* 22 U.S.C. § 9007.

[5] Judge Davison stated that the raw expenses listed in Doc. 81, Ex.I (which after deductions resulted in the request of $48,968.60) total $147,243.40, and made his calculations accordingly.  (R&R at 15.)  The table in fact states that the total expenses are $147,243.30.  This discrepancy of ten cents is surely a typographical error.

File List," a list of costs paid by his counsel, (Doc. 81, Ex. I), and to certain costs paid by Petitioner, (Doc. 81, Ex. K).

### 2.    Photocopying and Scanning Costs

Respondent first argues that costs incurred for items being "reproduced, scanned, or served" are not compensable because Petitioner "does not specify the purpose of these items." (Doc. 92 at 12.)  I agree, to an extent.

"Photocopying costs have been allowed as costs to the extent that the copies are used as court exhibits or were furnished to the court or the opposing counsel," but "[m]oney spent to copy documents for the litigant's own use are not recoverable." *Freier v. Freier*, 985 F. Supp. 710, 713 (E.D. Mich. 1997).  The itemized list provided by Petitioner's counsel does not specify the purpose of any of the $5,010.10 in cost entries listed as "Reproduction/Duplication" and "Scanning."  Unlike other charges on this list (such as those for filing fees and process servers), there is no way to reasonably evaluate the purpose of these costs for copying and scanning, and the bulk of these costs are more likely than not part of SSGRA LLP's ordinary office overhead. But because some fraction was undoubtedly for exhibits or providing documents to the Court or opposing counsel, I will reduce these costs by 90% rather than 100%.  Accordingly, I reduce the compensable amount of costs paid by counsel to ($17,983.30 – ($5,010.10 * .90)) = $13,384.21.

### 3.    State Proceeding Costs Paid by Counsel

Respondent further objects to the compensation for any costs paid by counsel because the "Detail Cost Transaction File List" provided by Petitioner does not differentiate between costs spent on the state court proceeding and costs spent on the federal proceeding.  (Doc. 92 at 13.) As stated earlier, Petitioner in the circumstances here cannot recover fees for the state court proceeding, and courts that deny fees for matters litigated in other fora have also denied costs

associated with those matters.  *See, e.g.*, *Lebiedzinski*, 2005 WL 906368, at *3.  Petitioner is

therefore not entitled to costs associated with the state court proceeding.  But, as stated above in

connection with Petitioner's attorney's fees, I disagree with Respondent's contention that

Petitioner's failure to differentiate the costs between the two proceedings means that he is not

entitled to any costs at all.  I find that Judge Davison's recommended reduction of the remaining

compensable costs by 50% is reasonable.  (R&R at 15.)  Petitioner is therefore entitled to

($13,384.21*0.5) = **$6,692.11** for costs paid by counsel.

### 4.      Other Costs Paid by Petitioner

Respondent objects to the inclusion of Petitioner's expenses related to translation of

Spanish-language documents because these services were not court-ordered.  (Doc. 92 at 11 n.2

& 13.)  She relies on the Eastern District of Michigan's holding in *Freier*, 985 F. Supp. at 713,

but that case does not support her position.  First, it was considering costs under 28 U.S.C. §

1920, not ICARA, and second, the former statute does not in fact have a requirement that

interpreters be court-appointed.  *See* 28 U.S.C. § 1920(6) (describing distinct "[c]ompensation of

court appointed experts" and "compensation of interpreters").  Expenses for translation of

Spanish documents for use by English-speaking lawyers and in a proceeding before an English-

speaking judge are reasonable.  *See, e.g.*, *Paulus ex rel. P.F.V. v. Cordero*, No. 12-CV-986, 2013

WL 432769, at *5 (M.D. Pa. Feb. 1, 2013) (collecting cases); *Guaragno v. Guaragno*, No. 09-

CV-187, 2011 WL 108946, at *4 (N.D. Tex. Jan. 11, 2011) (same).  Accordingly, I adopt Judge

Davison's recommendations as to interpreter/transcription costs.[6]

---

[6] I agree with Judge Davison's recommended reduction of the translation costs by 30% to
account for those in connection with the state proceeding.

Respondent argues that "some of the supporting documentation" for Petitioner's out-of-pocket expenses "was in Spanish and should be disregarded." (Doc. 92 at 11 & n.2, 13.)  I do not find this objection persuasive, as the documentation in Spanish, coupled with the spreadsheet provided by Petitioner, (Doc. 81, Ex. K), clearly show the relevant dates and amounts in Euros and that the invoices are associated with Respondent and his parents' travel from Barcelona to New York.  Respondent also maintains that Petitioner's out-of-pocket expenses for his parents' travel constitute "costs on behalf of witnesses," and must be disregarded.  (Doc. 92 at 12-13.)  I agree, in part.  While costs associated with witnesses who appear at a hearing – who included Petitioner's parents – are "expenses that ICARA specifies as presumptively reimbursable," *Souratgar*, 818 F.3d at 78, several of the invoices for flights and hotel stays for Petitioner's parents coincide with the dates for pre-trial proceedings where their attendance was not necessary.  Accordingly, I reduce the compensable expenses by €3,340.85.

Lastly, Respondent argues that some of Petitioner's hotel expenses were in fact for Petitioner's attorneys, (Doc. 92 at 13, 20), and it appears she is correct.  Petitioner submitted two hotel invoices, one naming Mr. Abbott and the other naming Mr. Saltzman, each for a four-night stay in White Plains in December 2019 totaling $2,464.86.  While Mr. Abbott and Mr. Saltzman understandably wished to stay at the same hotel as their client during trial for convenience, I see no reason why they could not have instead taken the Metro-North train to White Plains from Grand Central Terminal, which is a walk of mere minutes from their offices in Midtown Manhattan.[7]  I find that the hotel stays for Petitioner's attorneys were not necessary, and I reduce the compensable out-of-pocket expenses accordingly.

---

[7] Mr. Saltzman's office, located in the Helmsley Building at 230 Park Avenue, is across the street from the MetLife building, connected via escalator to Grand Central Terminal.

I therefore find that Petitioner is entitled the following out-of-pocket costs:

|  | Raw Amount | Final Amount in Dollars |
| --- | --- | --- |
| Travel (invoices in dollars) | $4,862.53 – ($2,464.86) | $2,397.67 |
| Travel (invoices in Euros) | €16,703.59 – (€3,340.85) | $15,691.87[8] |
| Transcription | $28,818.83 - ($28,818.83 x .30) | $20,173.18 |
| **TOTAL** |  | **$38,262.72** |

\*\*\*

As outlined in the above discussion, Petitioner's necessary fees and costs are as follows:

$183,686.42 (fees) + $6,692.11 (costs paid by counsel) + $38,262.72 (costs paid by Petitioner))

= **$228,641.25** in fees and costs.

## C.   <u>Equitable Considerations</u>

Both Petitioner and Respondent object to Judge Davison's equitable reduction of the

compensable fees and costs by 85%.  Petitioner argues that such a large reduction was

unreasonable and contrary to the legislative intent behind ICARA.  (Doc. 93 at 8-11.)

Respondent argues that a 100% reduction is appropriate both because Petitioner was responsible

for the removal of the child from Spain due to his domestic abuse and because Respondent's

financial condition means she is unable to pay any award.  (Doc. 92 at 13-21.)

### 1.   **Petitioner's Abuse of Respondent and Responsibility for the Removal of the Child**

Respondent objects to the R&R on the basis that Petitioner's coercive control and

psychological abuse towards her renders an award of fees and costs "clearly inappropriate" under

---

[8] €13,362.74 converted to USD.  The current exchange rate as of 08/09/2021 is 1.1743. *See* https://www.bloomberg.com/quote/EURUSD:CUR (last visited August 9, 2021, 12:39 p.m.).

ICARA, 22 U.S.C. § 9007(b)(3), relying on *Souratgar*, 818 F.3d at 79, *Radu v. Shon*, No. 20-CV-246, 2021 WL 1056393, at *4 (D. Ariz. Mar. 19, 2021), *Guaragno*, 2011 WL 108946, at *2, and *Silverman v. Silverman*, No. 00-CV-2274, 2004 WL 2066778 (D. Minn. Aug. 26, 2004).

The Second Circuit has held that an award of fees and costs is clearly inappropriate when the successful petitioner bears responsibility for "the circumstances giving rise to the petition." *Souratgar*, 818 F.3d at 79-80.  The *Souratgar* petitioner bore such responsibility because (1) he committed acts of physical violence against the respondent that did not stop after the respondent had left the family home, (2) the respondent's departure from the country was related to the petitioner's violence, and (3) there were no countervailing factors that favored the petitioner.  *Id.* Likewise, in both *Guaragno* and *Silverman*, the court found that the petitioner's physical and mental abuse of respondent was an appropriate consideration in determining if the fee award was inappropriate.  *See Guaragno*, 2011 WL 108946, at *3; *Silverman*, 2004 WL 2066778, at *4.  In *Radu*, the abuse was almost entirely psychological, as it was here, but the abuse was only one of several reasons for concluding that a fee award was clearly inappropriate.  *See* 2021 WL 1056393, at *3-4 (no fee awarded because petitioner prevailed only in part, award would prevent respondent from caring for children, petitioner provided no support for children and petitioner was psychologically abusive).

The "unclean hands" exception to a fee award is almost always applied to acts of physical violence, sometimes coupled with acts of emotional abuse, and Respondent has not provided authority for the proposition that an award can be clearly inappropriate based on emotional abuse alone.  *See Hart v. Anderson*, No. 19-CV-2601, 2021 WL 2826774, at *6 (D. Md. July 7, 2021) (finding petitioner's "repeated pattern of alcohol abuse and violence" rendered a fee award inappropriate); *see also Jimenéz Blancarte v. Ponce Santamaria*, No. 19-13189, 2020 WL

428357, at *2 (E.D. Mich. Jan. 28, 2020) (finding an award for fees and costs inappropriate where petitioner had physically abused respondent and their child); *Asumadu v. Baffoe*, No. 18-CV-1418, 2019 WL 1531793, at *1 (D. Ariz. Apr. 9, 2019) (finding same when petitioner physically abused the respondent more than once). *Souratgar* referred repeatedly to the petitioner's "violence," as opposed to "abuse," which suggests the Court meant physical, not mental, abuse. *See* 818 F.3d at 79-82. I do not hold that emotional abuse can never be so bad as to make a fee award clearly inappropriate, but I find that this case, which was almost entirely about psychological as opposed to physical abuse, and in which both sides were less than candid, does not rise to the level of those cases justifying complete denial of an award. Further, an award of at least some fees serves the statutory purpose of deterring future child abductions. *In re JR*, No. 16-CV-3863, 2017 WL 74739, at *4 (S.D.N.Y. Jan. 5, 2017). Although the coercive control Respondent experienced was no doubt serious domestic abuse, I agree with Judge Davison that Respondent has not met her burden to show that a fee award to Petitioner would be clearly inappropriate. (R&R at 16-17.)

## 2. Respondent's Inability to Pay

"[A] respondent's inability to pay an award is a relevant equitable factor for courts to consider in awarding expenses under ICARA." *Souratgar*, 818 F.3d at 81; *see In re J.R.*, 2017 WL 74739, at *4. Courts in the Second Circuit have been "mindful that an expenses award that is greater than a respondent's total assets requires, at the very least[,] a reasoned explanation." *Sanguineti*, 2016 WL 1466552, at *9 (cleaned up); *accord Lukic v. Elezovic*, No. 20-CV-3110, 2021 WL 1904258, at *2 (E.D.N.Y. May 12, 2021).

When a respondent demonstrates financial hardship, courts have reduced the fee award proportionately. *See, e.g.*, *Whallon v. Lyon*, 356 F.3d 138, 141 (1st Cir. 2004) (affirming

reduction in fees and expenses by 65%); *Rydder v. Rydder*, 49 F.3d 369, 373-74 (8th Cir. 1995) (reducing fee award by around 46% after considering respondent's straitened financial circumstances); *In re J.R.*, 2017 WL 74739, at *4 (reducing award by two-thirds after considering respondent's inability to pay); *Willing v. Purtill*, 07-CV-1618, 2008 WL 299073, at *1 (D. Or. Jan. 31, 2008) (reducing award by 15% due to respondent's financial circumstances, including respondent's unemployment). An award should be reduced with ICARA's purpose in mind, meaning the award should still deter future violations of the Convention. *See In re J.R.*, 2017 WL 74739, at *4; *Willing*, 2008 WL 299073, at *1.

Here, Judge Davison reduced the award by 85% in light of Respondent's demonstrated financial hardships. (R&R at 18.) Respondent has demonstrated that she is under financial strain: she has not been able to secure employment in Spain as she is not a legal resident there, and she owes her attorneys over $170,000. (Doc. 86-1 at 2.) She represents that she has no savings, assets, or property. (*Id.*) Her most recent bank statement provided to this Court represents that she has a savings account with a balance of $395.10, and a checking account with a balance of $3,255.36. (Doc. 86-4.) Her net income in 2019 was approximately $27,551. (Doc. 86-3.) As such, Respondent has sufficiently demonstrated that a substantial fee award for Petitioner would greatly strain her finances, and Respondent clearly would not be able to pay an unreduced award of fees and expenses totaling $228,641.25.[9] Accordingly, while I do not find,

---

[9] Petitioner argues that the imposition of a fee award on Respondent must impact her ability to care for the child for a reduction based on financial strain to be considered. (Doc. 93 at 8.) Petitioner does not cite a case within this Circuit to support his position (although he misstates in his objections that *Norinder v. Fuentes*, 657 F.3d 526 (7th Cir. 2011), is a Second Circuit case). The Court has not located a case in this Circuit holding that an adverse impact on the child is required for a reduction. To the contrary, the cases suggest it may be one of many proper considerations. *See Onrust v. Larson*, No. 15-CV-122, 2015 WL 6971472, at *13 (S.D.N.Y. Nov. 10, 2015) (noting that impact on party's ability to care for child is a consideration but denying fee-shifting for other reasons); *Haimdas v. Haimdas*, No. 09-CV-

as Respondent urges, that a complete reduction in fees and costs, is necessary – for one thing, she has a graduate degree from a Spanish university and should at some point be able to get permission to work – I agree with Judge Davison's reduction of the award by 85%.  (R&R at 18.).

A district court is not bound by precedent to reduce a fee award by a certain percentage, as Petitioner implies.  (*See* Doc. 93 at 9-10.)  The Court may reduce the fee award according to its discretion.  *In re J.R.*, 2017 WL 74739, at *4.  Nor, as Petitioner argues, does such a reduction defeat the purposes of ICARA fee shifting.  (*See* Doc. 93 at 10-11.)  Imposing a proportionate financial consequence will still deter future violations of the Convention and comports with the purpose of ICARA.  *See Willing*, 2008 WL 299073, at *1 (finding a reduced award "sufficient to deter future violations of the Convention").

The revised lodestar amount is as follows: ($183,686.42 (fees) + $6,692.11 (costs paid by Petitioner's counsel) + $38,262.72 (costs paid by Petitioner)) = $228,641.25, reduced by 85% = **$34,296.19**.

### D.    Remainder of R&R

I have reviewed for clear error the portions of the R&R to which no objection has been raised, and find no error, clear or otherwise.

## CONCLUSION

For the foregoing reasons, with the exceptions noted above, I adopt the R&R as the decision of the Court.  Petitioner's motion for attorney's fees and costs is GRANTED in part.  It

---

2034, 2011 WL 13124276, at *1 (E.D.N.Y. Aug. 29, 2011) (impact on ability to remain in child's life is among equitable factors considered).

is ordered that Respondent remit to Petitioner a total of **$34,296.19** in fees and costs.  The Clerk

of the Court is respectfully directed to terminate the pending motion, (Doc. 81).

**SO ORDERED.**

Dated:  August 9, 2021
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.